NORTHROP CORPORATION, Plaintiff-Appellant, v. AIL SYSTEMS, INC., et al., Defendants-Appellees.

First District (6th Division) No. 1—91—0970

Opinion filed August 30, 1991.

Wildman, Harrold, Allen & Dixon, of Chicago, and Sheppard, Mullin, Richter & Hampton, of Los Angeles, California (Robert E. Kehoe, Jr., Michael R. Blankshain, James G. Bonebrake, Joseph F. Coyne, Mary E. Tarduno, and Stephen J. O'Neil, of counsel), for appellant.

Ross & Hardies and Michael H. King, P.C., both of Chicago (Kurt H. Feuer and J. Michael Amrein, of counsel), for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff filed this interlocutory appeal from an order of the circuit court of Cook County striking its prayer for injunctive relief and denying its motion for preliminary injunction.

Plaintiff, Northrop Corporation (Northrop), is primarily engaged in the design, development and manufacture of defense electronics systems for use in high technology aircraft, such as the B-1B bomber. Defendants in this action are Eaton Corporation and AIL Systems, Inc. (AIL, collectively), Eatons's wholly owned subsidiary. Northrop and AIL entered into a contract (the Agreement) in December 1980, which provided that if AIL obtained a contract from the United States Air Force (the government) to develop the B-1B's electronic countermeasures system (ECM system), then AIL would engage Northrop as a subcontractor for the development and initial production on the Bands 6, 7 and 8 transmitters, a part of the system. The Agreement also provided that AIL would retain Northrop as a subcontractor "subject to Government approval" if the government awarded AIL "follow-on development or production contracts." The Agreement specifically provided for termination under certain circumstances, including: "[i]nterruption of the team relationship *** at any time as a result of Government direction"; "[c]ancellation of the referenced program"; and "[t]he expiration of twelve (12) months from the date of this agreement." AIL subsequently received the prime contract from the government, and pursuant to the Agreement, awarded Northrop contracts regarding the Bands 6, 7 and 8 transmitters for nearly 10 years, bringing in approximately $672 million in revenue to Northrop.

In the late 1980's, in response to the government's requests, AIL initiated an integrated program to correct deficiencies and increase the capabilities of the ECM system, which it referred to as "CORE" production effort. Pursuant to AIL's request, Northrop submitted a proposal for $52 million for CORE effort affecting Bands 6, 7 and 8 transmitters. AIL subsequently informed Northrop that its "make/buy review" of the CORE effort, conducted "with Air Force concurrence" and required by its contract with the government, revealed that it would be more cost effective to perform the work in-house. As a result, AIL decided to perform all work itself rather than subcontracting it out. Northrop contested

AIL's decision, claiming that the Agreement required all work affecting the Bands 6, 7 and 8 transmitters be subcontracted to Northrop. AIL responded by letter dated August 9, 1990, that the work was not contemplated by or subject to the Agreement. AIL also stated that the work was performed pursuant to the correction of deficiency clause in its prime contract with the government.

On November 9, 1990, Northrop filed a complaint against AIL in the District Court for the Northern District of Illinois based upon AIL's alleged obligation under the Agreement to subcontract CORE retrofit work to Northrop. On December 4, 1990, the Federal court dismissed Northrop's complaint for lack of subject matter jurisdiction. AIL's counsel informed Northrop at the hearing that it had filed a declaratory judgment action in New York seeking a judgment that the Agreement was terminated or, alternatively, that AIL had completely fulfilled its obligations under the Agreement. The New York court has stayed that suit pending the outcome of this case.

Later on the same day, Northrop filed this complaint against AIL in the circuit court of Cook County which was virtually identical to its Federal complaint and was based upon AIL's alleged breach of the Agreement. The complaint contained causes of action for declaratory relief, promissory estoppel, breach of contract and breach of implied covenant of good faith and fair dealing. Northrop alleged that it would be irreparably harmed by AIL's breach through loss of future business, harm from its competitors, and destruction of its technical work force. AIL subsequently moved to dismiss based upon the prior, pending New York action and on the ground that Northrop failed to properly state a claim for injunctive and other relief. On January 25, 1991, Northrop filed a preliminary injunction motion supported by six affidavits, which it maintains sets forth specific facts establishing a contract right, irreparable injury, likelihood of success on the merits and inadequacy of a monetary remedy.

On February 27, 1991, the trial judge denied injunctive relief, finding that Northrop had an adequate remedy at law for money damages for breach of contract, and that the complaint failed to contain a cause of action for specific performance. The judge did not read Northrop's preliminary injunction motion or the supporting affidavits and refused to defer his ruling until he had done so. The court struck Northrop's prayer for injunctive relief, denied its preliminary injunction motion, and transferred the case and the two pending motions to the law division, where they remain pending.

Northrop filed an interlocutory appeal from this order on March 28, 1991. On March 8, 1991, the government terminated its CORE effort prime contract with AIL due to a lack of funding.

On appeal, Northrop argues that the trial court erred in striking its prayer for injunctive relief; in denying its preliminary injunction motion; and in failing to consider the preliminary injunction motion and supporting documents and affidavits.

We first consider whether the trial court improperly denied Northrop's injunctive relief. Under the general principles of equity, a party seeking injunctive relief must establish a lawful right needing protection; an inadequate remedy at law; and that irreparable harm will be suffered without the protection sought. (*Amigleo v. Bernardi* (1988), 175 Ill. App. 3d 449, 529 N.E.2d 1020.) A party seeking a preliminary injunction must also establish a substantial likelihood of success on the merits. (*American National Bank & Trust Co. v. Carroll* (1984), 122 Ill. App. 3d 868, 462 N.E.2d 586.) Injunctive relief is an extraordinary remedy which should be used sparingly, with due restraint, and only when the circumstances clearly require it. (*Hannan v. Watt* (1986), 147 Ill. App. 3d 456, 497 N.E.2d 1307.) Finally, because the decision to grant or deny such relief lies in the trial court's sound discretion and its findings may not be disturbed absent an abuse thereof (*Instrumentalist Co. v. Band, Inc.* (1985), 134 Ill. App. 3d 884, 480 N.E.2d 1273), our role on review is limited to considering whether the trial court abused its discretion (*Hough v. Weber* (1990), 202 Ill. App. 3d 674, 560 N.E.2d 5), or whether its judgment was against the manifest weight of the evidence. *Jones v. Board of Fire & Police Commissioners* (1984), 127 Ill. App. 3d 793, 469 N.E.2d 393.

■■ We conclude that the trial court properly denied injunctive relief. First, the court specifically found that Northrop had an adequate remedy at law for money damages or breach of contract. If there is a legal or equitable remedy that will make plaintiff whole after trial, a preliminary injunction should not issue. (*Schwartz v. Coldwell Banker Title Services, Inc.* (1989), 178 Ill. App. 3d 971, 533 N.E.2d 1161.) A legal remedy is adequate when it is clear, complete and is as practical and efficient in achieving the prompt administration of justice as is the equitable remedy. (*Shodeen v. Chicago Title & Trust Co.* (1987), 162 Ill. App. 3d 667, 515 N.E.2d 1339.) The judge described Northrop's case as "nothing more than a thinly disguised breach of contract action" and Northrop's prayer for injunctive relief as "an additional gilding of the lily." The court then transferred plaintiff's case to the law division with its four

causes of action intact. We agree with the trial court that the gravamen of the complaint is breach of contract. Presumably, the court will determine the parties' rights under the contract, and if it finds a breach occurred, may award damages. Under the circumstances, this remedy is clear, complete and more practical and efficient than injunctive relief.

■ Nor do we believe that Northrop adequately demonstrated a likelihood of success on the merits to justify a preliminary injunction; that is, that the Agreement here is the type that courts will specifically enforce. Generally, Illinois courts have refused to enter mandatory injunctions to enforce contracts "which by their very terms call for a succession of acts whose performance cannot be consummated by one transaction, and which require protracted supervision and direction." (*New Park Forest Associates II v. Rogers Enterprises, Inc.* (1990), 195 Ill. App. 3d 757, 762, 552 N.E.2d 1215, 1218.) Moreover, a party seeking a mandatory injunction must show " 'extreme urgency or "great necessity" ' " that " 'the need for such relief [is] *** clearly established and free from doubt.' [Citation.]" (*New Park Forest Associates*, 195 Ill. App. 3d at 761, 552 N.E.2d at 1217.) Where complete relief may be afforded plaintiff upon final hearing, plaintiff is not entitled to mandatory preliminary relief. *In re Marriage of Sherwin* (1984), 123 Ill. App. 3d 748, 463 N.E.2d 755.

Moreover, as Northrop acknowledged in its motion for an extension of time to file its brief in this court, "intervening events here have removed the urgency for an immediate decision" in this case. As indicated above, Northrop will be afforded complete relief upon final hearing of this matter and, therefore, failed to establish the necessity for the extraordinary relief requested.

■ Finally, we note that the government cancelled AIL's prime contract in March 1991. As such, AIL could not award Northrop a subcontract even if the trial court on remand ordered injunctive relief. Although Northrop argues that the government will likely reinstate the project in the future, a court of equity cannot assume what it cannot accomplish. (*New Park Forest Associates*, 195 Ill. App. 3d 757, 552 N.E.2d 1215.) Moreover, through Northrop's declaratory judgment action, it can seek an order determining its rights under the contract. Under the circumstances, such remedy is more appropriate than an injunction.

In summary, Northrop failed to establish an inadequate remedy at law and a need for injunctive relief. Consequently, the court's denial of Northrop's petition for a preliminary injunction and its dis-

missal of that portion of the complaint requesting injunctive relief were not improper. In view of that holding, it is not necessary to consider Northrop's complaint that the trial judge failed to consider certain material furnished to him by Northrop.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

RAKOWSKI, P.J., and LaPORTA, J., concur.